IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

SEEBACH AMERICA, INC.,

           Plaintiff,

v.                                        CIVIL ACTION NO. 2:09-cv-00510

SEETECH, LLC, et al.,

           Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the defendants' Motion to Dismiss Complaint, or in the Alternative, for Summary Judgment on Counts V and VII of Plaintiffs' Complaint [Docket 12], filed on June 10, 2009. After the parties stipulated to extending the time for a response, the plaintiff filed a Memorandum in Opposition on June 29, 2009. The defendants filed a Reply on July 8, 2009. As explained below, the defendants' Motion is **DENIED**.

**I. Background**

This case involves a dispute between Seebach America, Inc. ("Seebach"), and its former president Brian Edmonds. Seebach supplies filters and filtration systems to industrial companies. In May 2003, Seebach hired Edmonds as its vice president, and it promoted him to president in December 2005. Edmonds resigned on March 9, 2009. On May 8, 2009, Seebach filed suit against Edmonds and two companies purportedly owned by him. The Complaint sets forth eight claims alleging various breaches of fiduciary duty, misappropriation of trade secrets, trademark

infringement, unfair competition, conversion, unjust enrichment, and tortious interference with contract.

The defendants's Motion, however, challenges only the tortious-interference-with-contract claims, Counts V and VI. Those Counts assert that Edmonds, while still working for Seebach, formed a competing business venture and unlawfully interfered with Seebach's employment and business relationships.

The defendants offer two arguments as to why these Counts must be dismissed. First, they contend that, as a matter of law, there could not have been tortious interference with contract because Seebach did not have contracts with its employees or its customers. Second, the defendants assert that Edmonds did not act unlawfully, but merely engaged in legitimate post-employment competition.

**II. The Motion to Dismiss Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). A court reviewing the sufficiency of a complaint must "take the facts in the light most favorable to the plaintiff," but it "need not accept legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.* (quoting *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship.*, 213 F.3d 175, 180 (4th Cir. 2000)). Upon reviewing those facts, the court must determine whether the claims "give the defendant fair notice of what the . . . claim is and the grounds on which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

The plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Girratano*, 521 F.3d at 302 (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-65 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986), for the proposition that "on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'"). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* at 1965.

### III. Discussion

West Virginia recognizes a cause of action based on tortious interference with contractual relations. *Torbett v. Wheeling Dollar Sav. & Trust*, 314 S.E.2d 166, 171 (1983)). A plaintiff may pursue recovery for interference with both existing and prospective business or employment relationships. *Id.* To maintain a tortious-interference claim, a plaintiff must show: (1) existence of "a contractual or business relationship or expectancy"; (2) an intentional act of interference by a party outside that relationship or expectancy; (3) causation; and (4) damages. *Id.* at 173. If a plaintiff makes out a prima facie case of tortious interference, a defendant may attempt to prove justification or privilege as affirmative defenses. *Id.*

Counts V and VI are sufficient to withstand the defendants' Motion. Seebach alleges that it is the business of manufacturing and distributing filters and filtration solutions to customers, (Compl. ¶ 12); that it has established strong relationships with its customers, (*id.* ¶ 24); that it forms stable relationships with its customers and relies on repeat business; and that it "maintains contractual relationships with its customers and employees" (*id.* ¶¶ 130). Furthermore, Seebach alleges that Edmonds, while president of Seebach, interfered with Seebach's employment

relationships by falsely informing Seebach employees that Seebach was not going to continue its operations, (*id.* ¶¶ 43-47); by stating or implying to Seebach customers that Seebach was ceasing operations, (*id.* ¶¶ 61, 107); by submitting a proposal to a Seebach customer, on behalf of his own venture, designed to mislead the customer into thinking it was dealing with a successor in interest to Seebach, (*id.* ¶¶ 65-69); by misusing confidential information to interfere with Seebach's customer relationships, (*id.* ¶ 78-82); and by soliciting Seebach employees and customers while he was still president of Seebach, (*id.* ¶¶ 106, 111). Simply put, these factual allegations state a claim for which relief may be granted.

The defendants argue that there could have been no tortious interference with contract because Seebach did not have contractual relationships with its employees or its customers. They maintain that Seebach's employees, including Edmonds, were at-will, and that Seebach's customers placed on-demand orders, rather than through sales contracts. These contentions lack merit.

The defendants rely on two decisions to support their contention that a written contract is required for a tortious-interference claim to proceed: *Torbett*, 314 S.E.2d at 173, and *Epling v. Dolgencorp, Inc.*, 2006 WL 925171 (S.D. W. Va. April 10, 2006) (unpublished). Those decisions, however, do not stand for such a principle of law. In *Torbett*, the Supreme Court of Appeals of West Virginia addressed a claim by a woman against her former employer for interfering with her attempts to obtain employment. The former employer contended that a covenant not to compete prevented the plaintiff from taking on new employment. *Torbett*, 314 S.E.2d at 167-69. The court detailed the contours of the tortious-interference cause of action within this context. But it did not hold that the tort was limited to a situation where an employee has been retained by written contract or restrained by a covenant not to compete. *Id.* at 171-73. Likewise, this court's unpublished

opinion in *Epling* is not germane. In that case, to determine whether the court possessed subject matter jurisdiction, Judge Chambers addressed whether a plaintiff-employee's state law tort claims against her former employer were pre-empted by federal law. 2006 WL 925171 at *1-2. For the court to possess jurisdiction, the plaintiff's claims must have been capable of being brought under ERISA. Concluding that her claims could have been brought under ERISA, the court ruled that the claims were preempted and that the court possessed jurisdiction. In reaching this conclusion, the court stated that "for the plaintiff to succeed in her claim for tortious interference with a contract right, she would have to show the existence of a contractual relationship and that the defendants' actions interfered with her expectations under that contract." *Id.* at *3. This language does not imply that a tortious-interference claim requires a written contract. Rather, the court merely explained that, because there was a written contract, it had to examine the contractual language to determine whether the claim could have been brought under ERISA.

For Seebach to prevail on its tortious-interference claim, it need not show that it had written contracts with its employees or its customers. While a contractual relationship will suffice, so will a "business relationship or expectancy." *Torbett*, 314 S.E.2d at 173. Seebach has alleged that Edmonds, while he was president of Seebach, induced all of Seebach's employees to quit their jobs and come work for him at his competing venture. Similarly, Seebach alleges that Edmonds intentionally mislead Seebach's customers in order to get their business for his new venture. The fact that Seebach's business relationship with its employees and customers was not written is of no avail.

Seebach has sufficiently stated a claim for which relief may be granted. Counts V and VI of the Complaint do not merely recite the elements of the claims, but rather provide specific and

plausible factual allegations. Furthermore, the court declines the defendants' invitation to go beyond the pleadings to determine if Edmonds's actions were legitimate. Discovery has not yet commenced, and such a ruling would be premature at this time.

The defendants' Motion [Docket 12] is thus **DENIED**. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

        ENTER:      October 16, 2009

_____
Joseph R. Goodwin, Chief Judge