IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

SEEBACH AMERICA, INC.,

        Plaintiff,

v.                                    CIVIL ACTION NO. 2:09-cv-00510

SEETECH, LLC, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the defendants' Motion for Partial Summary Judgment [Docket 98]. For the following reasons, the defendants' motion is **DENIED**.

**I.    Background**

This case involves a dispute between Seebach America, Inc. and its former president, Brian Edmonds. Seebach America, Inc. ("Seebach America") was founded as the American subsidiary of the German company, Seebach GmbH, and this case is one part of a larger ongoing dispute between the two former owners of Seebach GmbH. The recitation of facts below is limited to those that bear on the instant dispute.

In 2003, Bela Seebach and his brother Stefan founded Seebach America as a subsidiary of their company, Seebach GmbH, to sell filters and filtration systems in the United States. In May 2003, Brian Edmonds was hired as a vice president of Seebach America, and he was promoted to president in December 2005. On April 28, 2008, Bela and Stefan Seebach entered into an Agreement of Sale which, among other things, transferred all of Bela's interest in Seebach America to Stefan Seebach. Pursuant to this agreement, Bela's son, Ingo Seebach, ceased employment with

the Seebach companies. Shortly thereafter, Ingo Seebach "established a competing company, and named it Seetech." (Defs.' Mem. Supp. Mot. Summ. J. [Docket 99], at 2). On March 9, 2009, Brian Edmonds resigned from his employment with Seebach America and immediately began working for Seetech. In the days that followed Mr. Edmonds' departure from Seebach America, "the remainder of the Seebach America employees resigned," (*Id*., at 4) and many began working at Seetech.

On May 8, 2009, Seebach America filed the instant suit in this court, naming as defendants Mr. Edmonds and two companies that Mr. Edmonds purportedly ran, including Seetech. The Complaint sets forth eight claims alleging various breaches of fiduciary duty, misappropriation of trade secrets, trademark infringement, unfair competition, conversion, unjust enrichment, and tortious interference with contract. On January 3, 2011, the defendants moved for partial summary judgment with respect to Counts I and II[1] of the Complaint as well as certain damages. At the time the defendants filed their Motion, the parties had not yet completed discovery.

## II.     Summary Judgment Standard

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

---

[1] In the plaintiff's response, it stated that "Seebach [America] does not intend to pursue Count II at trial." (Pl.'s Resp., at 16, n. 20.) Accordingly, I will only address the defendants' arguments with respect to Count I and the contested damages.

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, 490 U.S. 228 (1989).

**III.     Analysis**

    **A.     Trademark Infringement Under the Lanham Act  - 15 U.S.C. § 1125(a)(1)**

The plaintiff asserts that Seetech has infringed Seebach America's trademark in violation of the Lanham Act[2] by acting "in a manner that has confused or is likely to confuse consumers," and by misusing "Seebach America's trademark with the intention of trading on or usurping the goodwill established by Seebach America therein." (Compl. ¶¶ 88-89.)

---

[2] The Lanham Act states, in pertinent part, that, "[a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act." 15 U.S.C. § 1125(a)(1)(a)(2006)**.**

In a trademark infringement action, the plaintiff must show: (1) that its mark is valid and protected and (2) that the defendant's use of the contested mark is likely to cause confusion concerning the origin of the goods or services. *See Petro Stopping Centers, L.P. v. James River Petroleum, Inc*., 130 F.3d 88, 91 (4th Cir. 1997). Because the defendants have not challenged the validity of the plaintiff's mark, the remaining issue is whether there is a likelihood of confusion between the marks used by Seebach America and Seetech.

The Fourth Circuit uses a seven-factor test in assessing whether a likelihood of confusion exists: (1) the distinctiveness of the senior mark; (2) the similarity of the two marks; (3) the similarity of the goods and services that the marks identify; (4) the similarity of the facilities employed by the parties to transact their businesses; (5) the similarity of the advertising used by the two parties; (6) the defendant's intent in adopting the same or similar mark; and (7) actual confusion. *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 463 (4th Cir. 1996). "Certain factors may not be germane to every situation; moreover, though several factors are simultaneously present, some factors may, depending on the case, be more important than others." *Id.*

The defendants contend that there is no evidence in the record of a likelihood of confusion between the two marks. With respect to the seventh factor, the Fourth Circuit has recognized that "likelihood of confusion is an inherently factual issue." *Petro Stopping Centers,* 130 F.3d at 92. Moreover there is ample evidence in the record of actual confusion among customers about the parties and their respective marks. (*See* Pl.'s Resp. Ex. 8 [Docket 111-8], at 30:19-30:24). The Fourth Circuit has made clear that "the seventh factor–actual confusion–is often paramount," because "[w]hen the defendant's use of a similar mark has actually confused the public, our inquiry ends almost as soon as it begins." *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 804

(4th Cir. 2001) (internal quotation marks omitted). Even viewing the facts in the light most favorable to the nonmoving party, the question of actual confusion in this case is quintessentially factual in nature. In addition, there are genuine issues of material fact with respect to several of the other factors including the similarity of the marks, the similarity of the products,[3] and the defendants' intent in adopting the Seebach America mark. I **FIND** that there are genuine issues of material fact as to the plaintiff's trademark infringement claims. Accordingly, the defendants' Motion for Partial Summary Judgment is **DENIED**.

### B. Damages

The defendants also assert that they are entitled to summary judgment with respect to various damages. As a result of *the parties' own agreement*, discovery was incomplete when the defendants moved for summary judgment, and the plaintiff subsequently noticed the depositions of at least two individuals whose testimony will likely bear on the contested damages. Keeping in mind this perhaps incomplete record of damages, I now turn to the defendants' arguments.[4]

First, I **FIND** that there are genuine issues of material fact with respect to those damages that allegedly stem from Mr. Edmonds' breach of fiduciary duty, including lost inventory, allegedly

---

[3] Under the third factor, the products sold by Seetech were highly similar–if not identical–to the products sold by Seebach America. The products were so similar that in the initial weeks of his employment with Seetech, Mr. Edmonds instructed an employee to "use the Seebach catalog" until Seetech could produce a new catalog for customers. (Pl.'s Resp. Ex. 21[Docket 111-21]).

[4] The defendants request for summary judgment on the lost inventory damages as sanction for discovery violations under Rule 37 is **DENIED.** I note my considerable disappointment that the parties, in spite of accommodation by and repeated admonitions from, this court have been unable to cooperate in the discovery process. I am not, however, inclined to impose such an extreme sanction particularly in light of the dispute in the record as to these damages.

improper bonus payments, and payments to Bela Seebach out of company funds.[5] The defendants have provided deposition testimony of an employee of Seebach GmbH in support of these damages, and as of the time this motion was filed, the defendants had yet to depose two Seebach America employees who could testify to the issue. Second, I **FIND** that the plaintiff has provided evidence that precludes awarding summary judgment to the defendants on the alleged lost income damages. Finally, while I note that a plaintiff may only recover attorney's fees in a trademark infringement suit in exceptional cases, I nonetheless find that there are genuine issues of material fact with respect to whether the defendants' conduct was "malicious, fraudulent, wilful, or deliberate in nature." *See Retail Serv., Inc. v. Freenies Publ'g*, 364 F.3d 535, 550 (4th Cir. 2004). Because I **FIND** that there are genuinely disputed issues of material fact, the defendants' Motion for Partial Summary Judgment is **DENIED**.

### IV. Conclusions

For the foregoing reasons, the defendants' Motion for Partial Summary Judgment [Docket 98] is **DENIED**. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: April 7, 2011

Joseph R. Goodwin, Chief Judge

---

[5] The very narrow issue in an earlier case before this court was whether a $200,000 "cash infusion" was a loan or a capital contribution. *See Seebach v. Seebach America*, No. 09-cv-326 (S.D. W. Va. Oct. 7, 2010). No other transfers were ruled upon in that earlier action, and, accordingly, the plaintiff is not precluded from raising these transfers in the instant action.